**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

CHUBB & SON et al.,

    Plaintiffs,

        v.

C & C COMPLETE SERVICES, LLC et al.,

    Defendants.

Civil Action No. 8:12-cv-01127-AW

## <u>MEMORANDUM OPINION</u>

Pending before the Court are the following Motions: Defendants' Motion to Dismiss; Defendants' Motion to Strike Surreply; and Plaintiffs' Motion for Leave to File Surreply. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, **GRANTS** Defendants' Motion to Strike Surreply, and **DENIES** Plaintiffs' Motion for Leave to File Surreply.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This case sounds in breach of contract and fraud. Plaintiffs are a group of insurance companies. The Complaint does not specify the relationship between Plaintiffs other than to say that they are related and that Plaintiff Chubb & Son is a division of Plaintiff Federal Insurance Company. The Complaint also names the following insurance companies as Plaintiffs: Chubb Custom Insurance Company; Great Northern Insurance Company; Pacific Indemnity Company; and Vigilant Insurance Company. Unless otherwise indicated, the Court will use the denomination "Plaintiffs" when referring to Plaintiffs as a whole.

1

Defendant C&C Complete Services, LLC (Complete) is a Maryland LLC. Complete engages in recovery, restoration, and reconstruction services on buildings and other structures that have sustained water, fire, smoke, and other damage. Defendant David L. King was Complete's operations manager and a member of Complete at all relevant times. Likewise, Defendant William Cornelius was Complete's president and a member of Complete at all relevant times.

Non-party Disaster Kleenup International, LLC (Disaster) engages in recovery services and the brokering of recovery services. In late October 2008, Defendant Chubb & Son entered into a Master Services Agreement (the Master Agreement) with Disaster. The Master Agreement describes Chubb & Son as follows: "Chubb & Son, a division of Federal Insurance Company, for itself and as servicer for The Chubb Corporation and its non-insurance company subsidiaries, or as manager of its Insurance company subsidiaries, an Indiana corporation." Doc. No. 5-2 at 11. Under the Master Agreement, Disaster would provide disaster services (e.g., recovery, restoration, and reconstruction) to certain properties (e.g., buildings and other structures). The Master Agreement specifies that Disaster would provide such services to Chubb & Son's policyholders through work orders and contemplates Disaster's contracting with contractors to provide such services. The Master Agreement requires Disaster to provide the contractors with the Master Agreement and secure the contractors' acknowledgment that the contractors intend for its terms to bind them. *See id.* at 2 § 1.

Plaintiffs allege that Disaster entered into written contracts and other agreements with Complete to provide the disaster services. In turn, Plaintiffs allege that Complete entered into contracts with Plaintiffs' insureds to perform the disaster services, engaging subcontractors to provide some of these services. As a part of the contracting process, Plaintiffs allege that

2

Complete submitted certain estimates or bids to Plaintiffs and/or their policyholders. The estimates detailed the services that would be performed and certified that the billed cost accurately reflected such services. Plaintiffs aver that Complete falsely represented that the estimates accurately reflected the true cost of the services. According to Plaintiffs, these misrepresentations resulted in payment for services that were not provided and overpayment for services that were provided.

The record contains one such work order/estimate. Doc. No. 5-4.[1] Apparently, the work order/estimate[2] is between Disaster, Complete, an insurance company referred to as "Chubb Group," and Lynn Hargis, owner of a District of Columbia property. The work order states that Complete will invoice the insurance carrier and requires Hargis to provide any insurance payments to Complete.  *See id.* at 2. The work order also states a payment schedule and references a "Scope of Work dated October 27, 2010" that an insurance adjuster purportedly approved. *See id.* at 3.

Plaintiffs also attach a spreadsheet to the Complaint. The spreadsheet lists nineteen alleged transactions and includes the following basic information regarding each: the insured's last name; the city and state of the transaction; the claim number; the date or date of the loss; the date or date of Complete's estimate; and the insurer. Doc. No. 1-1. Dissimilar to the work order

---

[1] Although this work order is outside the Complaint, the Complaint incorporates it by reference, therefore making it an appropriate subject of a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted) (courts must consider the documents that the complaint incorporates by reference when ruling on a 12(b)(6) motion to dismiss); *see also Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (courts may consider documents external to the complaint when ruling on a 12(b)(6) motion to dismiss where they are integral to and explicitly relied on in the complaint).

[2] Unless otherwise indicated, the Court refers to the work order/estimate as "work order."

discussed above, the spreadsheet sets forth no specifics surrounding the nineteen supposed transactions.

On April 12, 2012, Plaintiffs filed their 12-Count Complaint. Counts 1-4 are for various varieties of fraud. Counts 5-7 are for breach of various contracts. For its part, Count 8 is for unjust enrichment. Counts 9-11 are for violations of the state consumer protection statutes of, respectively, Maryland, Virginia, and the District of Columbia. Finally, Count 12 asserts a claim for civil conspiracy.

On May 11, 2012, Complete filed a Motion to Dismiss or, Alternatively, Motion to Drop Parties and/or Sever Claims (Motion to Dismiss). The Parties have concluded briefing on this Motion. Also pending before the Court are (1) Complete's Motion to Strike Surreply and (2) Plaintiffs' Motion for Leave to File Surreply Nunc Pro Tunc.

## II.    STANDARD OF REVIEW

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing,

the court must construe all factual allegations in the light most favorable to the plaintiff. *See*

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court

need not, however, accept unsupported legal allegations, *Revene v. Charles County*

*Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual

allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847

(4th Cir. 1979).

## III.    LEGAL ANALYSIS

## A.    Motion to Dismiss

### 1.    Counts 1 and 2—Fraud and Intentional Misrepresentation

#### a.    Choice of Law

A federal court sitting in diversity applies the choice of law rules of the state in which it

sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). "In cases sounding

in tort . . . , Maryland applies the venerable maxim of *lex loci delicti*." *Harvard v. Perdue Farms,*

*Inc.*, 403 F. Supp. 2d 462, 466 (D. Md. 2005) (citations omitted).  "Under this rule, the

substantive tort law of the state where the wrong occurs governs." *Williams v. Gyrus ACMI, Inc.*,

790 F. Supp. 2d 410, 414 (D. Md. 2011) (citation and internal quotation marks omitted). Where

the events giving rise to a tort action occur in more than one state, courts must apply the law of

the state where the last event required to constitute the tort occurred. *Id.* (citation omitted).

In this case, it is unclear where the fraud of which Plaintiffs complain occurred. The

Complaint and incorporated documents support the inference that it took place in Maryland,

Virginia, and the District of Columbia. However, as Plaintiffs found their Complaint on a

minimum of nineteen transactions and fail to provide specific facts regarding all of them except one, it is unclear what law (e.g., Maryland, Virginia, or District of Columbia) applies to which alleged instance of fraud. As the Parties rely primarily on Maryland law to support their respective arguments regarding the viability, or lack thereof, of the fraud claims, the Court will follow suit and apply Maryland law.

     b.  Analysis

    The elements for fraudulent misrepresentation under Maryland law are well-established. They are: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (1994) (citing cases). The elements of fraud must be proved by clear and convincing evidence. *See id.* at 664.

    Fraud claims also must be pleaded with particularity. Fed. R. Civ. P. 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citation and internal quotation marks omitted). "The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Id.* (citation omitted).

    In this case, Plaintiffs have failed to plead their fraud claim with particularity. Although Plaintiffs' spreadsheet purports to show the time and place of the false representations, the

Complaint and its incorporated documents do not contain sufficiently specific information concerning the contents of the allegedly false representations. Plaintiffs repeatedly state that Complete charged them for services it failed to provide and overcharged them for services that it did provide. Plaintiffs allege supporting details such as "that all work and materials described [in the estimates] were necessary for the performance of the [services]" and "that all work described [in the estimates] would be performed in providing [the services]." Doc. No. 1 at 7 ¶ 24. These supporting allegations, however, are not sufficiently distinguishable from the vague allegation that Complete charged them for services it failed to provide and overcharged them for services it did provide. That is, these allegations are vague and are equally amenable to the inference that Complete merely breached an agreement to provide the services, assuming such an agreement existed. Furthermore, although Plaintiffs found their fraud claims on no fewer than nineteen transactions, Plaintiffs have not provided, in all but one case, specific information about the work orders/estimates that presumably served as the vehicle of the alleged fraud.

Although the record contains one such work order, it does not satisfy Rule 9's heightened pleading standard. While the work order contains an addendum that lists a payment schedule, the schedule contains no details about how the Parties arrived at the shown figures. It actually references a "Scope of Work," which supports the inference that the allegedly fraudulent estimate is a separate document. In sum, there are too many questions concerning the contents of the allegedly false representation to conclude that Plaintiffs have pleaded their fraudulent misrepresentation claim with particularity.

Because the Court concluded that Plaintiffs failed to plead their fraud claim with particularity, the Court need not address whether Plaintiffs have otherwise stated a facially

plausible fraud claim. The dismissal of Plaintiffs' fraud claim does not prejudice their right to file an Amended Complaint seeking to state a cognizable fraud claim.

2.      *Counts 3 and 4 (Negligent Misrepresentation and Fraudulent Concealment)*

For the reasons stated in Part III.A.1.a, the Court applies Maryland law to Counts 3 and 4. Plaintiffs' negligent misrepresentation and fraudulent concealment claims are not cognizable. Both negligent misrepresentation and fraudulent concealment require the defendant to owe the plaintiff a duty of care. *See Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982) (the defendant, owing a duty of care to the plaintiff, must negligently assert a false statement); *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999) (defendant must owe the plaintiff a duty to disclose a material fact).

"In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques v. First Nat. Bank of Md.*, 515 A.2d 756, 759 (Md. 1986). Where, as here, "the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Id.*

Although contractual privity or its equivalent may satisfy this intimate nexus, not every contractual duty gives rise to a tort duty. *See id.* at 759–60; *see also 21st Century Props. Co. v. Carpenter Insulation and Coatings Co.*, 694 F. Supp. 148, 151 (D. Md. 1988) (citations omitted) (courts "have not profligately permitted indiscriminate recognition of tort causes of action in every contract case"). Accordingly, "courts in this district have attempted to limit remedies to contract law where the loss is purely economic and the parties engaged in arms-length commercial bargaining." *Gruppo Essenziero Italiano, S.p.A. v. Aromi D'Italia, Inc.*, Civil No.

CCB–08–65, 2011 WL 3207555, at* 8 (D. Md. July 27, 2011) (citing cases); *see also My Nat.*
*Tax & Ins. Servs., Inc. v. H & R Block Tax Servs., Inc.*, 839 F. Supp. 2d 816, 820 (D. Md. 2012)
(dismissing fraudulent concealment claim on a motion to dismiss because corporate plaintiff
owed corporate defendant no duty to disclose).

In this case, Plaintiffs' allegations lead inescapably to the inference that the complained-
of loss is purely economic. Furthermore, the principal players in the transactions underlying
Plaintiffs' claims are all commercial entities (i.e., Plaintiffs, Disaster, and Complete). Therefore,
although the Complaint does not support the inference that Plaintiffs bargained with Complete
directly, the allegations do not suggest that the bargaining was anything other than arm's-length.
Nor have Plaintiffs identified contractual language purporting to create a duty of care between
Complete and Plaintiffs. Accordingly, although Complete may stand in contractual privity with
Plaintiffs, the alleged nexus is insufficiently intimate to warrant the imposition of a tort duty.
Consequently, the Court dismisses Counts 3 and 4 of Plaintiffs' Complaint with prejudice.[3]

      3.     *Counts 5 through 7—Breach of Contract*

          a.     Choice of Law

Plaintiffs assert claims against Complete for breach of three separate agreements: (1) the
Master Agreement; (2) a Membership Agreement between Disaster and Complete; and (3)
several similar agreements between Complete and Plaintiffs' insureds (e.g., work orders). "A
federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells*
*v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (citing *Klaxon*, 313 U.S. at 496–97). Under Maryland
law, it is "'generally accepted that the parties to a contract may agree as to the law which will
govern their transaction, even as to issues going to the validity of the contract.'" *Nat'l Glass, Inc.*

---

[3] If subsequent developments demonstrate that the law of a state other than Maryland applies to these
claims and dictates a contrary result, the Court may entertain a Motion for Reconsideration.

*v. J.C. Penney Props., Inc.*, 650 A.2d 246, 248 (Md. 1994) (quoting *Kronovet v. Lipchin*, 415 A.2d 1096, 1104 (Md. 1980)). Therefore, courts typically need not inquire into the validity of choice of law provisions where "the parties agree that [the law of a particular state] law governs their claims." *Vanderhoof-Forschner v. McSweegan*, Nos. 99-1615, 99-1616, 2000 WL 627644, at *2 n.3 (4th Cir. May 16, 2000) (citing *Am. Fuel Corp. v.Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)); *compare Novell, Inc. v. Microsoft Corp.*, 429 Fed. App'x 254, 258–61 (4th Cir. 2011) (applying Utah law to contractual dispute without conducting choice of law analysis), *with In re Microsoft Corp. Antitrust Litig.*, 699 F. Supp. 2d 730, 737 (D. Md. 2010) (applying Utah law to contract in light of parties' agreement that choice of law provision governed their dispute), *rev'd on other grounds*, 429 Fed. App'x 254.

In this case, the Master Agreement contains a choice of law clause stating that New Jersey law shall govern it. Doc. No. 5-2 at 10 § 12. Thus, the court applies New Jersey law to the interpretation of this contract. Likewise, the Membership Agreement between Disaster and Complete, which the Complaint incorporates by reference, contains a choice of law clause requiring it to be interpreted in accordance with Delaware law. Doc. No. 5-3 at 35 § 11.9. Hence, the Court applies Delaware law to the interpretation of the Membership Agreement.

However, the work order between the Parties, Disaster, and Hargis does not appear to contain a choice of law clause. Under Maryland law, where the contract contains no choice of law clause, courts "should apply the law of the jurisdiction where the contract was made." *Chesapeake Bay Found., Inc. v. Weyerhaeuser Co.*, 848 F. Supp. 2d 570, 578 (D. Md. 2012) (citation omitted).

Here, the record does not reflect where the work order was made. Considering the signatories' residences and Plaintiffs' allegations, one could infer with equal plausibility that it

was made in Maryland, Virginia, or the District of Columbia. Furthermore, although Plaintiffs allege the existence of at least eighteen other work orders, the Complaint contains very few allegations regarding their content, thus hindering the Court from engaging in a meaningful choice of law analysis. As a result, given that the Parties rely primarily on Maryland law to advance their respective positions concerning the viability *vel non* of Plaintiffs' breach of contract claims, the Court will apply Maryland law to the interpretation of the work orders.

            b.       Analysis Count 5—Breach of Master Agreement

       Plaintiffs assert that Complete breached the Master Agreement. "Under New Jersey law, a plaintiff must establish the following elements to state a claim for breach of contract: (1) the existence of a contract between the parties; (2) the plaintiff satisfied the terms of the agreement; (3) the defendant failed to satisfy at least one term of the agreement; and (4) the breach caused the plaintiff to suffer damages. " *O'Brien v. Biobanc USA*, Civil No. 09–2289 (RBK/KMW), 2011 WL 2532465, at *3 (D.N.J. June 23, 2011) (citation and internal quotation marks omitted). Moreover, it is well-settled that the existence of a contract requires offer, acceptance, and consideration. *See id.* (citation omitted).

       In this case, Plaintiffs' allegations plausibly support the existence of a contract between them and Complete. Plaintiffs allege that Chubb & Son entered into the Master Agreement, and Complete's own evidence supports this allegation. *See* Doc. No. 5-2 at 1. The Master Agreement describes Chubb & Son rather broadly, lending support to the assertion that Plaintiffs were intended as parties to it. The Master Agreement also provides that Disaster would render the services to Chubb & Son's policyholders through work orders with contractors like Complete, and the record contains evidence of a work order between Disaster, Complete, "Chubb Group," and an insured. Doc. No. 5-4 at 2. The work order contains repeated references to the insurance

company and purports to create a payment arrangement between Complete, the insurer, and the insured. Therefore, construed leniently, the allegations and incorporated record evidence support the inference that Complete executed the work order with knowledge of the Master Agreement, thereby incorporating its terms into the work order or, alternatively, ratifying it. In sum, even though Plaintiffs' allegations are somewhat vague, they state a cognizable claim for breach of the Master Agreement.

        c.       Analysis Count 6—Breach of the Membership Agreement Between Disaster and Complete

Delaware law applies to the interpretation of the Membership Agreement. Under Delaware law, "to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. Supr. Ct. 2003). As with New Jersey law, Delaware law requires offer, acceptance, and consideration for the existence of most contracts. *See Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457, 461 (D. Del. 2008) (citations omitted).

In this case, the Complaint's allegations do not support the inference that Complete breached the Membership Agreement. Although Disaster and Complete executed the Membership Agreement, Plaintiffs do not allege, and the incorporated documents do not reflect, that Plaintiffs executed it. Moreover, the Complaint does little more than to refer to the Membership Agreement in passing. Thus, Plaintiffs' allegations do not warrant the inference that the Membership Agreement constitutes a contract between them, Disaster, and Complete.

Plaintiffs respond that they are third-party beneficiaries of the Membership Agreement. This argument fails. "Under Delaware law, . . to qualify as a third party beneficiary of a contract, (a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3rd Cir. 2001). Here, the Membership Agreement does not appear to refer to Plaintiffs or the Master Agreement. Nor does it appear to contain statements indicating that benefitting Complete was a material part of the bargain. Quite the opposite, the Membership Agreement explicitly states that the parties to it "intend to confer no benefit or right on any person or entity not a party to this Agreement." Doc. No. 5-3 at 35 § 11.7. Therefore, the Court dismisses Plaintiffs' claim against Complete for violation of the Membership Agreement.

Although this dismissal is with prejudice, the Court recognizes that the Master Agreement calls for Disaster to enter into agreements with contractors such as Complete to effectuate its purposes. Therefore, the Court may entertain this claim at a later stage if the case goes into discovery and discovery produces a reasonable basis on which for Plaintiffs to assert breach of the Membership Agreement as a standalone claim. However, the foregoing analysis does not suggest that the Membership Agreement is irrelevant to the issue whether there is a contract between Complete and Plaintiffs and, if so, whether Complete breached it.

     d.    Analysis Count 7—Breach of Various Agreements Between Complete and Plaintiffs' Insureds

Under Count 7, Plaintiffs essentially allege that Complete breached the work orders it entered into with Disaster and/or Plaintiffs' insureds. At this stage, Maryland law applies to this claim. "Under Maryland law, the elements of a breach of contract are 1) a contractual obligation and 2) a material breach of that obligation." *Cowan Systems LLC v. Ocean Dreams Transp., Inc.*, Civil No. WDQ–11–366, 2012 WL 4514582, at *3 (D. Md. Sept. 27, 2012). The elements of a contract, in turn, "are offer, acceptance, and consideration." *B-Line Med., LLC v. Interactive Digital Solutions, Inc.*, No. 1085, 2012 WL 6628922, at *10 (Md. Ct. Spec. App. 2012) (citation omitted).

In this case, although Plaintiffs' allegations are no model of clarity, they suffice to state a cognizable claim for breach of the work order discussed above. As noted, the Master Agreement, to which Chubb & Son is a signatory, contemplates that Disaster would enter into work orders with contractors like Complete to effectuate its purposes. The work order that the Complaint incorporates contains repeated references to the insurer (ostensibly "Chubb Group") and purports to create a payment arrangement between Chubb Group, Complete, and the insured. Furthermore, Plaintiffs clearly allege that Complete submitted unduly inflated estimates. Therefore, construing the Complaint and concomitant documents in the most favorable light, Plaintiffs have stated a claim for breach of the work order.

However, the Court must consider whether Plaintiffs have stated a cognizable breach of contract claim with respect to the other eighteen work orders. The Court concludes that they have. Plaintiffs' spreadsheet lists eighteen additional transactions and includes the following information about each: the insured's last name; the city and state of the transaction; the claim number; the date or date of the loss; the date or date of Complete's estimate; and the insurer. Construed leniently, Plaintiffs' allegations support the inference that these transactions were

14

governed by a work order in much the same way as the transaction described above; that they were carried out in connection with the Master Agreement; that Complete executed these work orders; and that the work orders discussed or referenced "Chubb Group" or some other insurer purporting to encompass all Plaintiffs. Accordingly, the Court denies Complete's Motion to Dismiss as to Count 7.

   *4. Count 8—Unjust Enrichment*

   Defendants argue that Plaintiffs' unjust enrichment claim fails for two reasons. First, Defendants assert that one cannot bring a claim for unjust enrichment where an express contract between the parties governs the subject matter of the claim. Defendants also assert that Plaintiffs' unjust enrichment claim is otherwise facially implausible.

   The Court disagrees. As to the first argument, "a plaintiff is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." *Vu Hoang v. Georgetown Contractors, Inc.*, Action No. 08:10–CV–2117–AW, 2010 WL 4485729, at *3 (D. Md. Nov. 9, 2010) (citation and internal quotation marks omitted). Here, as Defendants themselves argue that the Parties have no express contract, the existence of a contract concerning the subject matter is in dispute. As to the second argument, Plaintiffs have otherwise stated a cognizable unjust enrichment claim for the reasons stated in the Court's analysis concerning Plaintiffs' breach of contract claims. *See supra* Part III.A.3.b, d. Therefore, the Court denies Defendants' Motion to Dismiss as to Count 8.

   *5. Counts 9 through 11—Violation of State Consumer Protection Statutes*

   The Court can dispense with Plaintiffs' state consumer protection statute violation claims summarily. As such claims sound in fraud, they must be pleaded with particularity. *See McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 104 (D. Md. 2010) (citations omitted). The Court

has already concluded that Plaintiffs have failed to plead their fraudulent misrepresentation claim

with particularity and incorporates that analysis by reference. *See supra* Part III.A.1.b. As a

result, the Court grants Complete's Motion to Dismiss as to Counts 9 – 11. As with Plaintiffs'

fraudulent misrepresentation claim, this dismissal does not prejudice Plaintiffs' right to file an

Amended Complaint particularizing the factual basis of these claims.

       6.     *Count 12—Civil Conspiracy*

      Plaintiffs assert a civil conspiracy claim against Defendants David L. King and William

Cornelius, the operations manager and president of Complete. The Court applies Maryland law

to this claim for the reasons stated in Part III.A.1.a. No independent cause of action exists under

Maryland law for civil conspiracy. *See Woods v. Stewart Title Guar. Co.*, Civil No. CCB-06-

0705, 2006 WL 2135518, at *4 (D. Md. July 28, 2006) (citations omitted). Similarly, a party

cannot rely on civil conspiracy as the basis for recovery against a party absent an underlying tort.

*Sheard v. Bank of Am., N.A.*, Civil No. PJM 11–3082, 2012 WL 3025119, at *3 (D. Md. July 23,

2012). Therefore, the Court dismisses Plaintiffs' civil conspiracy claim. This dismissal does not

preclude Plaintiffs from relying on a civil conspiracy theory to hold King and/or Cornelius liable

if Plaintiffs manage to state a cognizable fraud claim. *See Woods*, 2006 WL 2135518, at *4 n.4

(citation omitted).

**B.**    **Motion to Sever or to Drop Parties**

      The Court declines to address Complete's Motion to Sever at this time. First, Complete

asserted it in the alternative to its Motion to Dismiss and the Court has granted the Motion to

Dismiss in part, thereby giving Complete some of the relief that it sought. Second, addressing the

Motion to Sever in the context of a potentially more specific Amended Complaint would be

more conducive to clarity and efficiency. Third, Complete does not adequately explain the

particular relief it seeks in its Motion to Sever or to Drop Parties. However, the Court's decision does not preclude Complete from raising this argument at a later stage, including in response to any Amended Complaint Plaintiffs may file.

**C.      Motion to Strike Surreply**

The Court grants Complete's Motion to Strike Surreply. Plaintiffs did not file their surreply in conformity with the Local Rules, surreplies are disfavored in this District, and the surreply would not alter the Court's analysis.

**D.      Motion for Leave to File Surreply**

As a corrective measure, Plaintiffs filed a Motion for Leave to File Surreply after filing their surreply. The Court denies this Motion for the reasons stated in Part III.C.

**IV.      CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Complete's Motion to Dismiss, **GRANTS** Complete's Motion to Strike Surreply, and **DENIES** Plaintiffs' Motion for Leave to File Surreply. A separate Order memorializing the Court's rulings follows.

| | |
|---|---|
| January 23, 2013 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |